# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**BRENDAN A. HURSON**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

October 6, 2022

LETTER TO ALL COUNSEL OF RECORD

Re:     *Cassandra P. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
         Civil No. 21-3109-BAH

Dear Counsel:

On December 6, 2021, Plaintiff Cassandra P. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case and the parties' cross-motions for summary judgment. ECFs 10, 13 and 14. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

## I.        PROCEDURAL BACKGROUND

Plaintiff filed a Title XVI protective application for Supplemental Security Income ("SSI") benefits on December 7, 2018, alleging a disability onset of January 22, 2002.[1] Tr. 259–96. Plaintiff's claim was denied initially and on reconsideration. Tr. 152–55, 159–65. On June 4, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 44–71. Following the hearing, on June 25, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 15–24. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Several different dates for both the application date and the disability onset date appear on the application documents. Tr. 259–96. However, both parties and the ALJ use December 7, 2018, as the application date and January 22, 2002, as the disability onset date. Tr. 15; ECF 13, at 1–2; ECF 14, at 1. As such, the Court will adopt those dates.

[2] 42 U.S.C. §§ 301 et seq.

Cassandra P. v. Kijakazi
Civil No. 21-3109-BAH
October 6, 2022
Page 2

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since December 7, 2018," the date of application.  Tr. 17.  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

> Obesity, status-post laparoscopic LINX device placement, hiatal hernia repair (04/22/16), status-post paraesophageal herniarepair, LINX removal, and conversion to DOR parital [sic] anterior fundoplication (05/30/19), degenerative disc disease, Ehlers-Danlos syndrome, status-post left labral tear repair/replacement/reconstruction with osteoplasty (2011, 03/14/13), trochanteric bursitis, sacroiliitis, status-post left knee arthroscopies (2001, 2008), polycystic ovarian disease, status-post tubal ligation (2014), status-post hysterectomy and bilateral salpingectomy (02/2/18), pelvic organ/vaginal vault prolapse/vulvodynia/vulvitis, pudendal neuralgia, hypertonic pelvic floor muscle dysfunction/stress incontinence, mast cell activation syndrome, bipolar disorder, anxiety disorder, post-traumatic stress disorder (PTSD), kinesthiophobia, depression, attention deficit disorder (ADD), and attention deficit hyperactivity disorder (ADHD).

Tr. 17–18.  The ALJ also determined that Plaintiff suffered from numerous non-severe impairments.  Tr. 18.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 19.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) EXCEPT: claimant can frequently operate right foot controls; occasionally operate left foot controls; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; frequently rotate, flex, and extend her neck; must avoid concentrated exposure to extreme cold, extreme heat, wetness, excessive vibration, hazardous moving machinery, and unprotected heights; can only perform

*Cassandra P. v. Kijakazi*
Civil No. 21-3109-BAH
October 6, 2022
Page 3

> simple, routine, repetitive, low stress (no strict production quotas, no assembly line
> pace) work involving occasionally interaction with supervisors, co-workers, and
> the general public; and changes in work duties must be introduced gradually.

Tr. 25.  The ALJ determined that Plaintiff was unable to perform past relevant work as a bartender
and administrative clerk but could perform other jobs that existed in significant numbers in the
national economy, including document preparer (DOT[3] 249.587-014 with 18,099 jobs nationally),
cutter-paster, press clippings (DOT 249.587-014 with 11,781 jobs nationally), and addressing clerk
(DOT 209.587-010 with 2,690 jobs in the national economy).  Tr. 33–34.  Therefore, the ALJ
concluded that Plaintiff was not disabled.  Tr. 34.

### III.   <u>LEGAL STANDARD</u>

As noted, the scope of this Court's review is limited to determining whether substantial
evidence supports the ALJ's factual findings and whether the decision was reached through the
application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.
1987); *see also Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780
F.3d 632, 634 (4th Cir. 2015)) ("A disability determination must be affirmed so long as the agency
applied correct legal standards and the factual findings are supported by substantial evidence.").
"The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be
conclusive . . . ."  42 U.S.C. § 405(g).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to
support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also
Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305
U.S. 197, 229 (1938)) ("[Substantial evidence] means—and means only—"such relevant evidence
as a reasonable mind might accept as adequate to support a conclusion.'").  It is "more than a mere
scintilla . . . and somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  In conducting the
"substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant
evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*,
*Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*,
715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible
without an adequate explanation of that decision by the [ALJ].").

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles.  The Fourth Circuit has
explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected
Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are
[SSA] resources that list occupations existing in the economy and explain some of the physical
and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational
Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the
Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th
Cir. 2015).

### IV.   <u>ANALYSIS</u>

Plaintiff raises several arguments on appeal, specifically that the ALJ erroneously: (1) failed to properly evaluate Plaintiff's subjective complaints; (2) failed to consider the combination of Plaintiff's impairments in formulating the RFC; and (3) ignored a hypothetical presented to vocational expert ("VE") that accounted for all of Plaintiff's impairments.  ECF 13-1, at 7–13.  Defendant counters that the ALJ properly evaluated Plaintiff's subjective complaints, that the ALJ properly considered Plaintiff's impairments in combination with each other, and that any error was harmless.  ECF 14-1, at 4–17.

The Court first considers Plaintiff's claim that the ALJ "improperly disregarded [Plaintiff's] complaints of pain and fatigue."  ECF 13-1, at 9.  In making this argument, Plaintiff relies primarily on *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1985).  ECF 13-1, at 9–10.  As Plaintiff explains, in *Walker*, the Fourth Circuit remanded where the claimant testified about experiencing pain and submitted evidence that the claimant's impairments caused that pain, but where the ALJ failed to "evaluate[] the effect of that pain on the claimant's residual functional capacity."  *Walker*, 889 F.2d at 49.  Contrary to the ALJ in *Walker*, the ALJ here did expressly evaluate and consider Plaintiff's pain throughout the RFC assessment.  *See, e.g.*, Tr.  26 ("[Plaintiff] alleged that she is limited in her ability to work due to pain, fatigue . . . ."), 27 ("In addition to [Plaintiff's] history of musculoskeletal pain, the record reflects that [Plaintiff] has a myriad of additional impairments that, while limiting her ability to perform some work-related activities, do not support a finding that they rose to the level of debilitation."), 28 ("[Plaintiff's] medical history contains various diagnoses and corresponding treatment, as well as sporadic complaints of pain that is exacerbated through exertional activities, that support significant limitations to her residual functional capacity.").  Indeed, the ALJ even relied on Plaintiff's subjective complaints in discounting the opinions of state medical consultants because the ALJ found Plaintiff's RFC to be more restricted than those medical consultants had determined.  Tr. 29 ("Balancing [Plaintiff's] numerous normal physical examinations with these subjective complaints [of pain] and looking at evidence in the light most favorable to [Plaintiff], the record supports more restrictive exertional, postural, and environmental limitations than opined by these consultants.").

Plaintiff asserts that "the ALJ's findings in this case are in direct conflict with the Commissioner's own regulation [20 C.F.R. § 416.929(c)] as well as [F]ourth Circuit case law" because "the ALJ required that [Plaintiff] produce objective evidence of the extent and degree of pain suffered."  ECF 13-1, at 9 (emphasis deleted).  The Fourth Circuit has "consistently held that 'while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity.'"  *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting *Walker*, 889 F.2d at 49).  In *Arakas*, the Fourth Circuit found that the ALJ had properly concluded that the claimant's "medically determinable impairments 'could reasonably be expected to cause some of the alleged symptoms,' thus satisfying the first step of the symptom-evaluation framework."  *Id.* at 96.  "But at the second step, the ALJ improperly discredited Arakas's statements about the severity, persistence, and limited effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'"  *Id.* (internal citations omitted).  "Because

Arakas was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,' the ALJ 'applied an incorrect legal standard' in discrediting her complaints based on the lack of objective evidence corroborating them." *Id.* (internal citations omitted).  The Fourth Circuit concluded that the ALJ "'improperly increased her burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)).

But here, contrary to Plaintiff's assertion and to the facts in *Arakas*, the ALJ did not require Plaintiff to "produce objective evidence of the extent and degree of pain suffered."  ECF 13-1, at 9.  As noted above, the ALJ properly determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 26.  The ALJ went on to evaluate Plaintiff's symptoms and the extent to which they limited Plaintiff's capacity to work. Tr. 26–29.  This analysis comported with both the applicable regulatory framework detailed in 20 C.F.R. § 416.929 and the requirements of *Arakas*.  The ALJ concluded that Plaintiff's pain did warrant some limitations in the RFC, but that Plaintiff's "diagnostic images, documented improvement through proper treatment, and numerous observations of her being in no distress with normal gait and strength do not support debilitating symptoms." Tr. 28.  This conclusion was not based on a lack of objective evidence.  Rather, the ALJ weighed Plaintiff's subjective complaints against the objective medical evidence of Plaintiff's pain-causing impairments, which remains permissible under *Arakas*.  *See* Tr. 27 ("[Plaintiff's] lack of significant complications regarding her past surgeries and generally mild findings reflected in the diagnostic images of her spine do not support debilitating musculoskeletal issue."), *id.* ("[W]hile [Plaintiff] has symptoms of hypermobility and sporadic joint pain, examination of her extremities was often unremarkable with generally normal range of motion and no clubbing, cyanosis, or edema."), *id.* ("[Plaintiff's] hysterectomy and additional treatment through pelvic floor physical therapy and ketamine injections was effective in easing her symptoms . . . ."), Tr. 28 ("[D]espite [Plaintiff's] alleged debilitating pain and an alleged inability to sit for longer than five minutes, she was often noted to appear healthy and to be in no distress throughout the medical appointments from the relevant period.").  In sum, the ALJ properly balanced Plaintiff's subjective complaints of pain with the objective medical evidence and Plaintiff's activities of daily living while formulating Plaintiff's RFC.  Thus, the ALJ did not run afoul of *Arakas* or 20 C.F.R. § 416.929(c).

In as far as Plaintiff argues that "the ALJ's analysis of [Plaintiff's] mental health impairments lack[s] any nuanced comprehension of the limitations [Plaintiff] suffers due to her mental impairments," the ALJ also properly balanced Plaintiff's testimony regarding the extent of her mental impairments with the medical evidence in the record.  ECF 13-1, at 10–11.  It is true that "[t]he medical record is extensive as it relates to [Plaintiff's] mental health treatment." *Id.* at 11.  The ALJ considered this extensive record, found that Plaintiff had moderate limitations in the four broad areas of mental functioning due to Plaintiff's mental impairments, and included limitations in Plaintiff's RFC to accommodate those impairments.  Tr. 22–25.  Plaintiff draws the Court's attention to a supposed "report[] from neurological testing," Tr. 2239–43, and "treatment notes from [Plaintiff's] treating psychiatrist," Tr. 1513–59, 1560–72, 2249–59, 3280–3300, 3301–04.  ECF 13-1, at 11.  But the exhibit Plaintiff cites contains no such neurological report; it is

merely an authorization to disclose Plaintiff's medical information with a handwritten note on the front page stating, "This patient has not been seen in our office from 2018 to present." Tr. 2239. Additionally, the ALJ clearly considered the treatment notes as the ALJ cited to them extensively throughout the opinion. Tr. 22–24, 29, 31–32. Plaintiff's argument amounts a request to reweigh the evidence, which I am not permitted to do. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). I am constrained to find that the ALJ's decision was supported by substantial evidence.

Plaintiff's second argument that the ALJ "ignored the combined effects of [Plaintiff's] exertional and nonexertional limitations" also fails. ECF 13-1, at 12. An ALJ must consider a claimant's impairments in combination when formulating the RFC. *See, e.g.*, *Anthony M. v. Comm'r, Soc. Sec. Admin.*, No. SAG-19-651, 2020 WL 434581, at *3 (D. Md. Jan. 28, 2020) ("[T]he ALJ was required to consider the combined effect of Plaintiff's severe and non-severe impairments in his RFC discussion, including his nonsevere depression and anxiety."). A review of the ALJ's opinion here makes clear that the ALJ did, in fact, consider the cumulative effects of Plaintiff's impairments. Tr. 22 ("The claimant's medically determinable mental impairments . . . , considered singly *and in combination*, do not meet or medically equal the criteria of Listings 12.02, 12.04, 12.06, 12.07, or 12.15." (emphasis added)), 28 ("[T]he observations of [Plaintiff] and [Plaintiff's] activities of daily living do not indicate that the *combined effect* of [Plaintiff's] impairments had a debilitating effect on [Plaintiff's] work-related functioning." (emphasis added)), *id.* ([Plaintiff's] medical history contains *various diagnoses* and corresponding treatment . . . that support significant limitations to [Plaintiff's] residual functional capacity." (emphasis added)), *id.* ("These limitations are further *compounded* by the claimant's history of obesity . . . ." (emphasis added)).

Lastly, Plaintiff argues that ALJ subsequently "ignored a complete hypothetical propounded to the vocational expert, which took into consideration the full extent of [Plaintiff's] mental and physical residual functional capacity including medication side effects." ECF 13-1, at 12. Essentially, Plaintiff argues that had the ALJ considered the combined effects of Plaintiff's impairments, the ALJ would have had to conclude that Plaintiff would be off task for more than 10% of the workday (in addition to customary breaks) because of Plaintiff's "impaired cognitive ability and an inability to maintain attention and concentration for an extended period," which would render Plaintiff disabled. *Id.* As Plaintiff correctly notes, the VE testified that if Plaintiff were to be off task for 10% of the workday (in addition to 48 minutes of breaktime), work would be precluded. Tr. 67–68. But the ALJ did not make a finding that Plaintiff would be off task for a particular period of time and was not required to do so. *Kane v. Comm'r, Soc. Sec. Admin.*, SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018) ("[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday.").

As noted above, the ALJ did consider the cumulative effects of Plaintiff's impairments, did find that Plaintiff had a moderate limitation in all four broad functional areas, including the ability to concentrate, persist, or maintain pace, and did account for these limitations in the RFC. Tr. 22–

*Cassandra P. v. Kijakazi*
Civil No. 21-3109-BAH
October 6, 2022
Page 7

24, 25.  The ALJ determined that Plaintiff's "mental impairments are adequately accommodated through the additional nonexertional limitations detailed [in the RFC]."  Tr. 29.  Beyond a general citation to over three hundred pages of medical records, Plaintiff does not explain how the medical evidence would necessitate a finding that Plaintiff would be off task for over 10% of the workday in addition to customary breaks.  ECF 13-1, at 12.  Nor does Plaintiff challenge the ALJ's findings of moderate limitations in the four broad functional areas.  Ultimately, the formulation of the RFC is the purview of the ALJ, and my review is limited to determining whether that formulation is supported by substantial evidence.  *See Craig*, 76 F.3d at 589 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ).").  Accordingly, regardless of whether I would have reached the same decision myself, I am constrained to find that the ALJ's decision is supported by substantial evidence.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff's motion for summary judgment and alternative motion for remand, ECF 13, is DENIED and Defendant's motion for summary judgment, ECF 14, is GRANTED.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.


Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge